**Manjit Singh DHOOT, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General of the United States, Respondent.**

**No. 06–1258.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Sept. 24, 2007.

Filed: Oct. 19, 2007.

Hector M. Roman, Roman & Singh, Jackson Heights, NY, for Petitioner.

Karen L. Grigsby, Robert A. Zauzmer, Office of United States Attorney, Philadelphia, PA, Thankful T. Vanderstar, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: McKEE, BARRY, and FISHER, Circuit Judges.

OPINION

McKEE, Circuit Judge:

Manjit Singh Dhoot petitions for review of an order of the Board of Immigration

Appeals affirming the Immigration Judge's denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). For the reasons that follow, we will deny Dhoot's petition for review.[1]

## I.

Inasmuch as we write primarily for the parties, we need not recite the factual or procedural background of this case. In order to qualify for asylum or withholding of removal, Dhoot must establish that he is a "refugee" under the Immigration & Nationality Act ("INA"), 8 U.S.C. § 1101(a)(42)(A).[2] Accordingly, he has the burden of proving by clear and convincing evidence that he is unable or unwilling to return to the country of his nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Therefore, Dhoot must show by credible, direct, and specific evidence that there exists an objectively reasonable basis for his claimed fear of persecution. *Balasubramanrim v. INS*, 143 F.3d 157, 165 (3d Cir.1998).

As we noted in *Fatin v. INS*, persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." 12 F.3d 1233, 1240 (3d Cir. 1993). That mistreatment must also be "because of the alien's race, religion, nationality, membership in a particular social group or political opinion." *Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir.2003) (citing 8 U.S.C. § 1231(b)(3)(A)). A showing of past persecution raises a rebuttable presumption that fear of future persecution is well-founded. 8 C.F.R. § 208.13(b)(1). However, that presumption may be rebutted with evidence that the asylum applicant can safely relocate to another part of the country, or where country conditions have changed to such an extent that the alien's fear of persecution is no longer reasonable. *Id.; § 208.13(b)(1)(I)* (see also *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 n. 3 (3d Cir. 2003)).

The IJ rejected Dhoot's claim because the IJ found that Dhoot's testimony was not plausible.[3] We review adverse credibility determinations of the IJ or BIA to

---

1. We have jurisdiction to review the final order of the BIA under 8 U.S.C. § 1252(a)(1). Where the BIA affirms the IJ's decision without opinion, we review the decision of the IJ as if it were the decision of the BIA. *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir.2005). We review adverse credibility determinations for substantial evidence. *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir.1998). Since the BIA adopted the decision of the IJ, we review the decision of the IJ as the final agency decision. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir.2002).

2. The Attorney General has discretion to grant asylum to any alien who demonstrates that he or she is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b). However, unlike asylum, the At-

torney General must grant withholding of removal if the alien demonstrates a "clear probability" that, upon return to his or her home country, his or her "life or freedom would be threatened" on account of race, religion, nationality, membership in a particular group, or political opinion. *Zubeda v. Ashcroft*, 333 F.3d 463, 469–70 (3d Cir.2003).

3. The IJ also found that country conditions in India have changed. He concluded that now, "there is no evidence in country conditions that the government in India has an inclination to persecute Sikhs or [Shiromani Akali Dal Mann] supporters particularly in Calcutta where [Dhoot] has lived his entire life." App. 47. He also noted that the current president of India is a Sikh, thus undermining Dhoot's well fear of persecution.

ensure that they were "appropriately based on inconsistent statements, contradictory evidence, and inherently improbable testimony ... in view of the background evidence on country conditions." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir.2003) (citations omitted). We uphold such adverse credibility determinations unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## II.

Dhoot contends that the IJ erred in concluding that Dhoot had not overcome his burden of proving past persecution or a well-founded fear of future persecution if returned to India based on his religion and his father's political opinion. Dhoot also contends that the IJ did not make an express credibility determination, but improperly expressed his own thoughts about Dhoot's testimony and situation.

We have explained that "some leeway must be given to the administrative arbiters to draw inferences based on common sense and logic as well as on personal experience and background knowledge gained from exposure to certain situations." *Dia*, 353 F.3d at 250. The IJ must nevertheless provide "at least some insight into why he or she finds that testimony implausible." *Id.* at 250–251, n. 21.

The IJ's skepticism about Dhoot's testimony arises from discrepancies and implausibilities that go to the heart of his claim. For example, Dhoot claimed that he was involved in incidents in August 2001 and October 2002 where he was beaten by police officers because of his religion and his father's political affiliation with the Shiromani Akali Dal Mann. Yet, after each incident, Dhoot traveled out of the country at least twice to participate in field hockey tournaments. After every trip, Dhoot returned home without making any attempt to seek protection while abroad. When asked why he did not apply for asylum during his trips outside of India, Dhoot merely stated that he did not want to put a "black mark" on the team. However, the IJ found that these actions were not those of a man who truly feared persecution and that they "cut very much into his claim as to whether or not ... [he] was actually harmed."[4] App. 42.

This inconsistency could, by itself, justify the adverse credibility determination because it goes to the heart of Dhoot's asylum claim. Since we believe that the record supports the IJ's rejection of his testimony and supporting documentation, we need not discuss the other implausibilities that troubled the IJ.[5] Rather, it is sufficient to note that, based upon our review of the entire record, we are convinced that it does not compel a contrary finding.

## III.

For the reasons set forth above, we will affirm the decision of the IJ, and deny the petition for review.

---

4. The IJ also noted that Dhoot never attempted to flee to another part of the country.

5. For example, the affidavits of Dhoot's mother and father were inconsistent with his testimony. In addition, the IJ found that the "medical documentation" submitted by Dhoot did not detail the kind of injuries Dhoot described, and that they were not contemporaneous with the events; rather, they were merely letters prepared for the purpose of the asylum hearing. Although we understand that an alien may not always have access to documentation that is analogous to hospital records we may take for granted, we nevertheless agree that the record supports the IJ's skeptical view of Dhoot's evidence.